## INTERNATIONAL LIFE INS. CO. v. CARROLL et al.

District Court, W. D. Tennessee, E. D. May 30, 1928.

### No. 38.

**1. Bankruptcy ⬅18½—Claims of bankrupts' creditors to insurance fund were properly dismissed, where trustees asserted claims.**

Where proceeds of insurance policy taken out by three persons, payable to survivors, were claimed by trustees in bankruptcy of survivors after death of one of persons insured, claims of creditors were subject to dismissal, but could be subsequently asserted in bankruptcy proceeding before referee.

**2. Insurance ⬅591—Proceeds of life policy taken out by persons associated in business, and made payable to survivors on due proof of interest, held not contract of indemnity payable to deceased's estate (Shannon's Code Tenn. §§ 4030, 4231).**

Policy of life insurance taken out by three persons, payable to the "survivor or survivors of any of the insured * * * immediately upon receipt of due proof of the death * * * and due proof of the interest of the claimant," *held* payable to trustees in bankruptcy of survivors, and not to deceased's widow, under Shannon's Code Tenn. §§ 4030, 4231, though policy was taken out to protect interests of persons insured as sureties for each other, and survivors had paid out nothing in behalf of deceased, since contract was not a contract of indemnity, and did not constitute in effect a separate policy on the lives of each of the persons insured in favor of family of first decedent, with mere right in survivors for reimbursement; words "due proof of interest of claimant" not being referable to payment of deceased's indebtedness.

**3. Insurance ⬅591—Trustees in bankruptcy of survivors held entitled to proceeds of life policy taken out by three persons payable to survivors.**

Trustees in bankruptcy of survivors, under policy of life insurance taken out by three persons, payable to survivor or survivors of any of them, *held* entitled each to one-half of proceeds of policy as against claim of deceased's widow that policy was merely contract of indemnity, which accrued for benefit of estate.

In Equity. Suit by the International Life Insurance Company against T. B. Carroll, James L. Lamping, and others, to cancel a policy of life insurance, in which plaintiff subsequently paid the face of the policy into court and interpleaded litigants in the state courts claiming the funds. Claims were asserted by Sara H. Ross, as executrix of the estate of J. W. Ross, deceased, by the trustees in bankruptcy of T. B. Carroll and James L. Lamping, and by various creditors. On motion of trustees and cross-motion of Sara H. Ross to dismiss certain claims. Motion to dismiss claims of creditors and of Sara H. Ross, as executrix of the estate of J. W. Ross, deceased, granted.

26 F.(2d)—24

Pitts, McConnico & Hatcher, of Nashville, Tenn., W. G. Timberlake, of Jackson, Tenn., and E. W. Ross, of Savannah, Tenn., for Sara H. Ross.

Hu Anderson, of Jackson, Tenn., for receiver of Carroll.

H. C. Murchison and Pearson & Hewgley, all of Jackson, Tenn., for receiver of Lamping.

S. J. Everett and G. H. Russell, both of Jackson, Tenn., McCall & Browning, of Huntingdon, Tenn., and R. R. Sneed, of Jackson, Tenn., for general creditors.

ANDERSON, District Judge. In November, 1924, J. W. Ross, Thos. B. Carroll, and James L. Lamping took out a policy of life insurance for $50,000, payable to "the survivor or survivors of any of the insured"; the insured being specified as "any one of Thomas B. Carroll, James L. Lamping, or John William Ross." Separate applications for the policy were made and signed by each of the insured. Some question arising as to the beneficial interest of the insured in each other's lives, J. W. Ross wrote a letter to the agent of the insurance company, containing the following statement:

"We three gentlemen are interested in the purchase of some real estate, and each is surety for the other on certain indebtedness. The insurance desired is simply a matter of protection, or, in other words, we desire to so arrange the matter that, if either should die, the others would not have to proceed against the property of the one dying."

At the time the policy was written, J. W. Ross was a United States District Judge, T. B. Carroll a reputed wealthy banker and a highly respected resident of Jackson, Tenn., and Lamping a supposedly solvent real estate speculator. The three men were heavily involved in various real estate transactions, and some six months after the issuance of the policy Carroll's bank failed, disclosing peculations on his part, and he and Ross were indicted by the Madison county grand jury. Shortly after the indictment was found, J. W. Ross was drowned as a result of his car running into a drainage ditch. First Carroll in 1925, and then Lamping in 1927, were adjudicated bankrupts, and their trustees are parties to this litigation.

The insurance company filed the original bill in this court, seeking to have the policy canceled on the ground of fraud in its procurement, and further setting up the legal defense that Ross, in violation of a clause in the policy, had met his death by self-

destruction. On the trial this court held, first, that Carroll, Ross, and Lamping had an insurable interest in each other's lives, and that there was no fraud in the procurement of the policy; and, secondly, that not only had the complainant failed to establish suicide by a preponderance of the evidence, but that the physical facts established that the death was by accident and not intention. On appeal this decree was affirmed. (C. C. A.) 17 F.(2d) 42, 50 A. L. R. 362. While this appeal was pending, Sara H. Ross, widow of J. W. Ross, filed a separate suit against complainant in Davison county, Tennessee, on the same policy, and three or four other suits were filed in other courts, and more suits were threatened.

On the affirmance of the original decree the insurance company paid the face of the policy, with interest, into the registry of this court, and filed a bill in the nature of a bill of interpleader, enjoining the litigants in the various state courts from further proceedings, and interpleading them and the trustees of the bankrupt estates of Carroll and Lamping and all other claimants to the proceeds of the policy. This decree was also appealed from and affirmed. 24 F.(2d) 345. The Circuit Court of Appeals interpreted the original decree as a recovery by Carroll and Lamping, or their trustees in bankruptcy, "in behalf of themselves and all others, according to their respective interests in the fund as such interests might thereafter be determined."

Claims have been filed by three classes of claimants: (1) The trustees of the bankrupt estates of Carroll and Lamping, claiming each one-half of the proceeds of the policy, on the theory that Carroll and Lamping, as the named beneficiaries in the policy, are alone entitled to its proceeds; (2) Sara H. Ross, as widow and executrix of J. W. Ross, and on behalf of her five minor children, claiming the entire fund on a theory to be later stated in this opinion; and (3) Robert Hinkle, Mrs. Lena Boyd, Sam Cohn, I. H. Nelson, clerk and master, Farmers' & Merchants' National Bank, Union & Planters' Bank & Trust Company, and H. L. Grigsby, receiver of the People's Savings Bank, assignee of T. B. Carroll, and others, have filed claims as the creditors, either of Carroll, Ross, and Lamping jointly, or individually.

Motions to dismiss the various claims have been filed—the trustees moving to dismiss the claim of Mrs. Ross, Mrs. Ross moving to dismiss the claims of the trustees of the bankrupt estates, and both moving to dismiss the claims of the various creditors. [1] It is obvious that the motions to dismiss as to the claims of the various creditors specified in the third class should be granted. If the claim of Mrs. Ross and the Ross children is valid, she takes in exclusion of the creditors; if the claim of the trustees is valid, they take as trustees for the creditors who have filed herein and others; and the appropriate place for the creditors to fight out their claims and have their rights settled is before the referee in bankruptcy for the Eastern division of this district. The motions to dismiss as to claims listed as No. 3 are accordingly granted. That leaves only the cross-motions of Mrs. Ross and the trustees in bankruptcy to be considered.

Mrs. Ross bases her claim to the entire proceeds on the theory set out in her petition, which is substantially as follows: That she is the widow and sole executrix of J. W. Ross; that the policy of insurance was, as regards the beneficiaries named therein, Carroll and Lamping, to protect and indemnify them against the deceased's proper portion of such joint indebtedness which the survivors might otherwise be required to pay for the deceased or his estate. Mrs. Ross stresses the language of the policy, to wit: The insurance company "agrees to pay fifty thousand dollars * * * to the survivor or survivors of any of the insured beneficiary * * * immediately upon receipt of due proof of the death of any one of Thomas B. Carroll, James L. Lamping, or John William Ross, the insured, * * * and due proof of the interest of the claimant." She also asserts that Ross gave notice of the purpose of the policy in the letter to the agent of the insurance company previously quoted.

She further contends that the policy was one of indemnity to each of the insured to the extent only he might be required to pay any part of the just portion of the joint obligations resting on any one of them who might die before the payment by him, leaving his associate obligors to pay that which, as between himself and them, he was personally and individually liable for; and that, beyond this extent, the contract was one of ordinary life insurance for the benefit of the estate and family of any one of the insured who might die during the life of the policy; in other words, it was to the same effect as if each of the insured had taken out the policy separately on his own life, payable to the other two as their interest might appear by reason of their indebtedness against him; that Thomas B. Carroll and James L. Lamping are insolvent, and have paid out nothing

on behalf of J. W. Ross, or, indeed, on their own behalf; and therefore they have no interest in the policy, it being one strictly of indemnity, and in consequence, under the laws of Tennessee, the widow and children are entitled to the proceeds of said insurance policy *as insurance taken out by the husband on his own life.*

Shannon's Code, § 4030: "A life insurance effected by a husband on his own life shall inure to the benefit of the widow and next of kin, to be distributed as personal property, free from the claims of his creditors."

Section 4231: "Any life insurance effected by a husband on his own life shall, in case of his death, inure to the benefit of his widow and children; and the money thence arising shall be divided between them according to the law of distributions, without being in any manner subject to the debts of the husband," etc.

This, I believe, briefly, but fairly, sets out the basis of the claim of Mrs. Ross to the proceeds of the policy.

Moss, trustee of the estate of T. B. Carroll, bankrupt, and White, trustee of the estate of James L. Lamping, bankrupt, have filed their claims for one-half each of the proceeds of the insurance policy, setting out that (a) Carroll and Lamping are the beneficiaries named in the policy; (b) that they were partners with Ross in real estate transactions, and had (and it has been so adjudged in this case) an insurable interest in each other's lives at the time of the issuance of the policy.

They move to dismiss the claim of Mrs. Ross on the following grounds: (1) That Sara H. Ross and her minor children are not beneficiaries under the policy; (2) that the policy is not one of indemnity, but an ordinary life insurance policy for the benefit of the survivors, showing on its face that it is an absolute obligation to pay to the survivors the entire amount of the policy; (3) that by the law of Tennessee and by the expressed terms of contract of insurance the policy and the application therefor constitute the entire contract between the parties, and nothing else may be looked to in determining the rights of the claimants to the proceeds of said insurance; (4) that said policy of insurance was not a policy for the benefit of the estate and family of any one of the assured who might die during the life of the policy, but, on the contrary, was a policy taken out by Carroll, Lamping, and Ross upon the life of the one who might die first for the benefit of the survivors.

Necessarily, the first and principal question to be decided in this matter is this: "Is the policy on the lives of Carroll, Ross, and Lamping, payable to the survivor or survivors 'on due proof of the interest of the claimant,' an indemnity contract, or an ordinary life insurance contract, where for a fixed premium the insurance company contracted to pay a specific sum to the surviving beneficiaries?"

Counsel for Mrs. Ross, in support of the proposition that the policy in this case is one of indemnity, cite Godsall v. Boldero, 9 East, 72, Wambaugh's Cases on Insurance, 927. The facts in that case were that certain creditors of the famous English statesman, William Pitt, who was heavily indebted, took out insurance on his life and paid the premiums down to his death. Parliament appropriated money for the payment of Mr. Pitts' debts, and the plaintiffs were paid in full out of this appropriation. Lord Chief Justice Ellenborough said in his opinion:

"This assurance * * * is in its nature a contract of indemnity, as distinguished from a contract by way of gaming or wagering. The interest which the plaintiffs had in the life of Mr. Pitt was that of creditors; a description of interest which has been held in several late cases to be an insurable one. * * * The action is, in point of law, founded upon a supposed damnification of the plaintiffs occasioned by his death, existing and continuing to exist at the time of the action brought; and, being so founded, it follows, of course, that if, before the action was brought, the damage, which was at first supposed likely to result to the creditors from the death of Mr. Pitt, were wholly obviated and prevented by the payment of his debts to them, the foundation of any action on their part, on the ground of such insurance, fails."

This case is interesting from the standpoint of an historical and legal curiosity, but is otherwise valueless to this discussion, for two reasons, viz.: It is not in point, and besides that is not the law now prevalent in Tennessee. If Lord Ellenborough had gone on, as the Oklahoma court did in Equitable Life Ins. Co. v. Weightman, 61 Okl. 106, 160 P. 629, L. R. A. 1917B, 1210, and, to prevent a forfeiture of the policy, decreed the payment of its face to the estate of Mr. Pitt, then the case would have been in point.

Certainly in the United States, if creditors take out a policy on a debtor's life and pay the premiums, the subsequent payment of the debt by third parties would be no defense to payment of the amount contracted for in the policy by the insurance company.

Godsall v. Boldero was decided nearly a century and a quarter ago, and it is to be doubted if it has been followed, either in England or America, for the last hundred years. See Dalby v. India & London Life Assurance Co., 28 Eng. Law & Ed. 312, where Parke, B., specifically overruled Godsall v. Boldero in 1854.

For the proposition that the policy in the instant case is not a joint policy, payable to the survivor or survivors of Carroll, Lamping, and Ross, but rather three separate policies on the individual lives of Carroll, Lamping, and Ross for the benefit of their estates, and merely to protect the estate of each from paying more than its share of a joint indebtedness, counsel has cited the remarkable case of Equitable Life Insurance Co. v. Weightman, 61 Okl. 106, 160 P. 629, L. R. A. 1917B, 1210. The facts in this case are as follows:

Thomas J. Gentry and his wife, Alverta B. Gentry, took out a policy on their joint lives, payable, upon the death of either, to the survivor. To settle the question of survivorship in her favor, Alverta murdered Thomas, and was arrested, indicted, tried, convicted, and imprisoned therefor. She assigned her interest in the policy to one Williams, who brought suit thereon; the company defending on the ground of murder of the insured by his wife, the beneficiary. Weightman, administrator of the insured, Thomas Gentry, intervened and asserted his right of recovery for the benefit of the husband's estate.

The court held in effect that the murder of the assured by the beneficiary, although it prevented a recovery on the policy by either her or Williams, her assignee, did not defeat the policy, or the right of the husband's administrator to recover on it, and awarded recovery to the administrator for the benefit of the husband's estate. The court said that "we have found no decisions from other courts involving this question under a policy exactly like this one, one policy upon two lives. However, we have concluded in this opinion that this policy partakes of the nature of two separate policies upon the life of each of the insured," and then goes on to show that on individual policies, where the beneficiary is disqualified, "a resulting or constructive trust arises by operation of law, by which the benefits of the policy vest in the insured, or in his estate in event of his death."

I do not find this case cited with approval in any federal decisions. Its reasoning does not appeal to me. It seems to me that its conclusion is based on a "tour de force"; i. e., calling a joint policy on two lives separate policies.

There is nothing ambiguous in the policy of the instant case. It is clearly a policy issued on the lives of three men, who as creditors of each other, or joint obligees, or partners, had an insurable interest in each other's lives, payable to the survivors or survivor of the first who died. I see no reason in fact or law—the Oklahoma case to the contrary notwithstanding—why this court must ignore the plain, obvious provisions of a written policy, and declare it to be in the nature of three policies on three separate lives for the benefit of the personal estate of the first decedent.

"There is no doubt that a man may effect an insurance on his own life for the benefit of a relative or friend; or two or more persons, on their joint lives, for the benefit of the survivor or survivors. The old tontines were based substantially on this principle, and their validity has never been called in question." Conn. Mutual Life Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251.

Numerous authorities have been cited and thoroughly discussed in the argument on these motions to dismiss. The court has considered them, but does not think it necessary or helpful to here review them. In a trial court, results rather than reasons are sought. The governing object in a trial court is to establish the rights of parties under the law, rather than to establish precedents. Indeed, the statement of the record and the respective contention of the various claimants answers all the questions involved.

[2] In order that there may be no ambiguity in this matter, the court holds:

(a) The policy in this case is in no sense a contract of indemnity. Indeed, indemnity in my understanding, is a principle of marine and fire insurance, and has no application to life assurance. The policy is what it purports to be, a contract for a fixed sum—$50,000—payable to Carroll and Lamping as survivors.

(b) "Due proof of interest of claimant," the words contained in the policy, have no reference whatsoever to the share of Ross' indebtedness, paid or not paid by the surviving beneficiaries. These words mean, if anything, that Carroll or Lamping must show that they are the beneficiaries named in the policy, that the policy has not been assigned, etc.

(c) As previously stated, this policy is not in effect a separate policy for $50,000 on the lives each of the three insured, for

the benefit of the estate and family of the first decedent, with merely a right in the survivors for reimbursement for moneys actually paid out on decedent's share of their joint indebtedness. On the contrary, it is plainly and explicitly a policy for $50,000, taken out by three men on the lives of each, the principal sum payable to the survivors or survivor.

[3] (d) Carroll and Lamping, the beneficiaries named in the policy, have been adjudged bankrupts. Moss and White, their respective trustees, are entitled each to one-half of the proceeds of the policy now in the registry of the court.

(e) The court has not determined, and does not here indicate, how the proceeds of the policy should be distributed after the bankruptcy court takes charge. The claimants listed as class 3 can there file their claims before the referee for the Eastern division and there have them determined.

The motion to dismiss the claim of Sara H. Ross as executrix, etc., is therefore granted. Let a decree in accordance with this opinion be drawn and entered.